IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. TBD. |
| v. | ) | **COMPLAINT** |
| GREEN APPLE, LLC D/B/A APPLEBEE'S NEIGHBORHOOD GRILL AND BAR, | ) ) | **JURY TRIAL DEMAND** |
| Defendant. | ) ) ) ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Cindy Frye and Tracy Frye (collectively "Claimants"), who were affected by such practices. As alleged with greater particularity below, the Equal Employment Opportunity Commission (the "EEOC" or "Commission") alleges that Green Apple, LLC d/b/a Apple's Neighborhood Grill and Bar ("Defendant") discriminated against the Claimants by subjecting them to a sexually hostile work environment because of their sex, female.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for South Carolina, Florence Division. This

lawsuit is being filed in the Florence Division because a substantial part of the events or omissions giving rise to the claims alleged in this suit occurred within the Florence Division.

## PARTIES

3.  Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.  At all relevant times, Defendant, a North Carolina limited liability company, has continuously been doing business in the State of South Carolina and the City of North Myrtle Beach. At all relevant times, Defendant has continuously had at least 15 employees.

5.  At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e (b), (g) and (h).

6.  At all relevant times, the Claimants, who are sisters, were subjected to sexual comments and conduct by one Assistant Manager.

## CONDITIONS PRECEDENT

7.  More than thirty days prior to the institution of this lawsuit, Tracy Frye filed charges with the Commission alleging violations of Title VII by Defendant.

8.  More than thirty days prior to the institution of this lawsuit, Cindy Frye filed a charge with the Commission alleging violations of Title VII by Defendant.

9.  On September 28, 2016, the Commission issued to Defendant a Letter of Determination on both of the Claimants' charges finding reasonable cause to believe that Title VII was violated, and inviting Defendant to join with the Commission in informal methods of

conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. On March 8, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation on both of the Claimants' charges advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement that was acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS - TRACY FRYE

12. From around January 2014 to around October 2014, Defendant engaged in unlawful employment practices at Defendant's North Myrtle Beach restaurant, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-(2)(a)(1). Specifically, Defendant discriminated against Tracy Frye ("T. Frye"), by subjecting her to severe or pervasive sexual comments and conduct that created a sexually hostile work environment. The comments and conduct were unwelcome to T. Frye and were committed by a male Assistant Manager (hereafter "the Assistant Manager" using initial capital letters).

13. In or around September 2013, T. Frye began working for Defendant as a Server.

14. Between January and October 2014, the Assistant Manager referred to her as "half-rack" in reference to the size of her breasts approximately three to four days per week, multiple times per day.

15. Between January and October 2014, the Assistant Manager made sexual comments, such as referring to salad dressing as cum (slang for sperm), in T. Frye's presence approximately three to four days per week, multiple times per day.

16. Between January and October 2014, on at least ten separate occasions, the Assistant Manager came up behind T. Frye, put his hands on both of her breasts, and rubbed his penis against her buttocks.

17. Between January and October 2014, the Assistant Manager brushed his penis against T. Frye's buttocks on at least two or three separate occasions.

18. Between January and October 2014, the Assistant Manager "dry humped" (meaning to simulate a sexual act) on T. Frye on at least two separate occasions.

19. On one occasion between January and October 2014, the Assistant Manager walked to the area where T. Frye was bent over cleaning, put his crotch near T. Frye's face, and propositioned her for oral sex.

20. On another occasion between January and October 2014, T. Frye was bent over cleaning when the Assistant Manager straddled T. Frye's head with his legs and pressed his penis against the back of her head.

21. Between January and October 2014, the Assistant Manager spread his legs, pointed to his penis, and propositioned T. Frye for sex on approximately two separate occasions.

22. T. Frye opposed the Assistant Manager's conduct and asked him to stop.

23. In or around March or April 2014, a second assistant manager witnessed the Assistant Manager touching T. Frye's breast and buttocks. The same day, T. Frye complained to the second assistant manager about the Assistant Manager's conduct.

24. The second assistant manager did not take effective action to stop the harassment, and the sexual harassment continued.

25. On or about October 21, 2014, the Assistant Manager referred to T. Frye by the terms "cunt," "whore," and "bitch," and shoved paperwork in her chest.

4

26. On or about October 22, 2014, T. Frye complained to Defendant's General Manager about being called "cunt," "whore," and "bitch" by the Assistant Manager.

27. T. Frye was subjected to sexual harassment which created a sexually hostile work environment based on her sex, female.

28. The effect of the practices complained of above has been to deprive T. Frye of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex, female.

29. The unlawful employment practices complained of above were intentional.

30. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of T. Frye.

## STATEMENT OF CLAIMS - CINDY FRYE

31. From around June 2014 to around October 2014, Defendant engaged in unlawful employment practices at Defendant's North Myrtle Beach restaurant, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-(2)(a)(1).  Specifically, Defendant discriminated against Cindy Frye ("C. Frye") by subjecting her to severe or pervasive sexual comments and conduct that created a sexually hostile work environment.  The sexual comments and conduct were unwelcome to C. Frye and were committed by the Assistant Manager who harassed T. Frye, as identified above.

32. On or about June 9, 2014, C. Frye began working for Defendant as a Server.

33. Between June and October 2014, the Assistant Manager made sexual comments, including talking about "vagina" or "pussy" approximately three to four days per week, multiple times per day in C. Frye's presence.

34. Between June and October 2014, on at least ten separate occasions, the Assistant Manager straddled C. Frye's head, pretended to hump her head, and propositioned her for oral sex.

35. Between June and October 2014, the Assistant Manager rubbed his penis against C. Frye's buttocks at least once a week.

36. On at least one occasion between June and October 2014, the Assistant Manager grabbed C. Frye's vagina.

37. On at least one occasion between June and October 2014, the Assistant Manager grabbed C. Frye's breast.

38. Between June and October 2014, the Assistant Manager smacked C. Frye's buttocks approximately two days per week, once or twice a day.

39. On at least one occasion between June and October 2014, the Assistant Manager pointed to his penis and asked C. Frye if she wanted a real man.

40. On at least one occasion between June and October 2014, the Assistant Manager asked C. Frye if she had been thinking about his penis all day.

41. Between June and October 2014, the Assistant Manager flicked his tongue between his fingers at C. Frye, a gesture indicating oral sex. This typically occurred multiple times per week. On one such occasion, the Assistant Manager asked C. Frye if her "pussy" needed a good licking.

42. Between June and October 2014, the Assistant Manager "dry humped" (meaning simulated a sexual act) C. Frye from behind on approximately three separate occasions. In two of these incidents, the supervisor approached C. Frye from behind, put his hands on her ribs, and lifted her onto a kitchen counter. C. Frye told the Assistant Manager that he was hurting her and

6

that his conduct was not funny, as the supervisor lifted her onto the counter. The Assistant Manager then humped C. Frye while he standing behind her.

43. On at least one occasion between June and October 2014, the Assistant Manager tried to forcibly place C. Frye's hand on his penis.

44. C. Frye opposed the Assistant Manager's sexual conduct by telling him to stop, to get off of her, or by making other comments indicating the conduct was unwelcome, like asking the Assistant Manager what was wrong with him.

45. A second assistant manager witnessed the Assistant Manager sexually harass C. Frye. Specifically, between June and October 2014, the second assistant manager witnessed the Assistant Manager rub his crotch against C. Frye's buttocks and dry hump C. Frye on the kitchen counter on at least two separate occasions. The second assistant manager was the same individual who had also witnessed the Assistant Manager harass T. Frye.

46. C. Frye complained to the second assistant manager about the sexual harassment.

47. In or around July 2014, Defendant's General Manager witnessed the Assistant Manager simulate oral sex by flicking his tongue between his fingers at C. Frye.

48. In or around July 2014, the General Manager heard the Assistant Manager use the terms "vagina" or "pussy" in C. Frye's presence.

49. In or around July 2014, C. Frye complained about the sexual harassment of herself and other female employees by the Assistant Manager to the General Manager. Specifically, C. Frye told the General Manager that the Assistant Manager could not keep his hands to himself; that it was getting to the point where she could not work with him; and that she did not know why the Assistant Manager thought he could get away with such behavior towards

her and other female employees. Despite this complaint, the sexual harassment of C. Frye and T. Frye by the Assistant Manager continued.

50.     In or around August 2014, after the Assistant Manager dry humped C. Frye on the kitchen counter, she told the General Manager that the Assistant Manager was physically hurting her and asked that the General Manager not assign her to work with the Assistant Manager. The General Manager denied C. Frye's request.

51.     C. Frye complained to the General Manager about the Assistant Manager's inappropriate sexual conduct on more than one occasion during the time the harassment was ongoing.

52.     Despite C. Frye's multiple complaints about sexual harassment between July and October 21, 2014, the General Manager took no action to stop the harassment.

53.     On or about October 21, 2014, C. Frye's husband learned that the Assistant Manager had sexually harassed C. Frye.

54.     On or about October 22, 2014, C. Frye and T. Frye met with the General Manager. C. Frye notified the General Manager that her husband planned to confront the Assistant Manager if Defendant did not take action to stop the harassment.

55.     Following that meeting, in or around late October 2014, Defendant terminated the Assistant Manager's employment.

56.     C. Frye was subjected to sexual harassment which created a sexually hostile work environment because of her sex, female.

57.     The effect of the practices complained of above has been to deprive Cindy Frye of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex, female.

58.     The unlawful employment practices complained of above were intentional.

59.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Cindy Frye.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from maintaining a sexually hostile work environment, and from retaliating against employees who oppose unlawful discrimination, make a charge of unlawful discrimination, or participate in an investigation of unlawful discrimination.

B.      Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant to make the Claimants whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

D.      Order Defendant to make the Claimants whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

E.      Order Defendant to pay the Claimants punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

F.  Grant such further relief as the Court deems necessary and proper in the public interest.

G.  Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted this the 3rd day of May, 2017.

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
Equal Employment Opportunity Commission
131 M Street, NE
Washington, D.C. 20507

LYNETTE A. BARNES
N.C. Bar No. 19732
Regional Attorney

YLDA MARISOL KOPKA
Supervisory Trial Attorney
Illinois Bar No. 6286627

**s/ *Rachael S. Steenbergh***
RACHAEL S. STEENBERGH
South Carolina Federal Bar No. 10867
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Charlotte District Office
129 West Trade Street, Suite 400
Charlotte, North Carolina 28202
Telephone: (704) 954-6472
Facsimile: (704) 954-6412
Email: rachael.steenbergh@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**